IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **MELODY CRAWFORD,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]   **2:11-CV-1611-KOB** |
| **FIRST EDUCATORS CREDIT UNION,** *et al.*, | ] |
| | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

This matter comes before the court on the Defendants' Motion for Summary Judgment (doc. 26). The parties fully briefed the motion and the court held a hearing on the motion on Wednesday, May 16, 2012. For the reasons stated on the record, and summarized below, the court finds that the Defendants' motion for summary judgment is due to be granted in its entirety.

## SUMMARY OF FACTS AND PLAINTIFF'S ALLEGATIONS

*Background*

The court views the following facts in the light most favorable to the plaintiff, Melody Crawford. Ms. Crawford is a fifty-one year old African American female, and worked at Defendant First Educators Credit Union's (FECU) Southside Branch as a teller starting in 2007. During her employment with the bank she filed two EEOC charges, one in January, 2010, and the other in July, 2010.

Ms. Crawford was terminated on December 14, 2010 for violating FECU's confidentiality policy. FECU maintained a Confidentiality Policy and had Teller Procedures that

1

prohibited the unauthorized disclosure of confidential information contained in member accounts. FECU also maintained Rules of Conduct that provided that an employee would be subject to termination for violating the confidentiality policy.

*Incident leading to Ms. Crawford's termination*

On December 13, 2010, Obelia Clay, one of FECU's members, visited the Southside Branch and withdrew $4,500 from her draft account, which was in her name alone. Ms. Crawford testified to being the teller who serviced Ms. Clay when she withdrew the money and recalled executing the transaction.

Later that same day, Ms. Clay revisited the Southside Branch and complained loudly that someone at FECU had violated her confidentiality by communicating to her brother, Ben Clay, the fact and amount of the withdrawal she had made earlier in the day. Branch Manager Kristy Hughes was summoned and met with Ms. Clay to receive her complaint. She asked Ms. Clay to submit her complaint in writing, which Ms. Clay did the following day. Although Ms. Crawford disputes that Ms. Clay actually wrote the complaint, she did not cite any evidence that raises a genuine issue of material fact over the authenticity of the letter.

Ms. Clay's complaint was transmitted to FECU's executive offices, where its president, Steven Nix, and vice president, John Wheeler, reviewed the substance of the complaint. After reviewing the complaint, Mr. Nix directed Mr. Wheeler to investigate the complaint and report back with his findings.

Mr. Wheeler interviewed two of Ms. Crawford's co-workers who were present on the teller line when Ms. Clay withdrew the funds from her account. The co-workers separately reported to Mr. Wheeler that each heard Ms. Crawford state aloud that she was going to call Ms.

Clay's brother, Ben Clay, to inform him that Ms. Clay had made a withdrawal from the account. Both co-workers also told Mr. Wheeler that they saw Ms. Crawford initiate a telephone call on the teller line after she made her statement of intent to call Mr. Clay. Although Ms. Crawford disputed that she stated an intention to call Mr. Clay about Ms. Clay's withdrawal, she admitted saying that "someone" should call Mr. Clay about his sister's visit to the bank. And although Ms. Crawford states that she never actually spoke to Mr. Clay after placing her phone call, she admits having placed the phone call to Mr. Clay. *See* Pl. Opp. Br. at 8 ("[Ms. Crawford's] actions were, in fact, based upon a caring attitude and a spirit of kindness. She knew that Mr. Ben Clay had asked the staff to take care of his sister . . . . She wanted to tell [Ms. Clay]'s brother that there were two strange men who seemed about to take [*sic*] advantage of her. [Ms. Crawford] had no thoughts of violating [Ms. Clay]'s confidentiality in any way; she only sought to protect her from a potential harm.").

Mr. Wheeler then spoke with Ms. Clay, who affirmed the facts stated in the written complaint she delivered to Ms. Hughes. Mr. Wheeler also interviewed Mr. Clay, who denied that Ms. Crawford had called him but admitted that he had knowledge of the withdrawal, its amount, and the subsequent confrontation with his sister about the withdrawal. Mr. Wheeler testified in deposition that he did not believe the explanation given by Mr. Clay.

Mr. Wheeler reported his findings to Mr. Nix, and collectively Mr. Nix and Mr. Wheeler decided to terminate Ms. Crawford's employment. Mr. Nix and Mr. Wheeler stated by affidavit that they terminated Ms. Crawford for violating FECU's policy and federal law. *See* 15 U.S.C. § 6802 (prohibiting financial institutions from disclosing nonpublic personal information to third parties).

*Ms. Crawford's allegations*

Ms. Crawford alleged two federal causes of action—race discrimination and retaliation under Title VII (Count 1), and age discrimination under the ADEA (Count 2)—and four state causes of action.

**SUMMARY OF FINDINGS**

*Race discrimination and retaliation under Title VII*

The court concludes that Ms. Crawford failed to establish a *prima facie* case of race discrimination under Title VII because she was replaced by a black female and she could not identify "nearly identical" comparators. The two comparators offered by Ms. Crawford made errors by either allowing a member to withdraw too much or allowing a person not associated with an account to withdraw money from that account. These errors were of a different quality than Ms. Crawford's violation of the confidentiality policy because they resulted from inadvertence or mistake, as opposed to Ms. Crawford's *intentional* violation of FECU policy.

Further, Ms. Crawford did not present evidence of pretext. Although Ms. Crawford argued that Mr. Wheeler did not have solid proof that she actually revealed details of Ms. Clay's account to Mr. Clay, the court nevertheless concludes that Mr. Wheeler had a reasonable basis for recommending that Ms. Crawford be terminated. Ms. Crawford's inability to present evidence of pretext is also fatal to her retaliation claim. Accordingly, the court GRANTS summary judgment on Count 1 for race discrimination and retaliation under Title VII.

*Age discrimination under the ADEA*

Although Ms. Crawford could establish a *prima facie* case for age discrimination because her replacement was twenty-two years old, the court nevertheless concludes that she failed to

provide evidence of pretext for the same reasons as for her Title VII claim. Accordingly, the court GRANTS summary judgment on Count 2 for age discrimination under the ADEA.

*State law claims*

The Eleventh Circuit has noted that "[t]he decisions to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (citation omitted).  Because Ms. Crawford's only federal claims giving rise to original jurisdiction in this court stand to be dismissed, the court finds no basis upon which to allow the remaining state law claims to proceed and declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the reasons stated above and on the record, the court GRANTS the motion for summary judgment, and ENTERS JUDGMENT in favor of the Defendants and against Plaintiff Melody Crawford as to all her federal claims. The court also DISMISSES Plaintiff Melody Crawford's state law claims WITHOUT PREJUDICE. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 18th day of May, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE